**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-cr-141-1 (TNM)** |
| **MARIO BUSTAMANTE LEIVA,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

On three separate days in April 2025, the Defendant, Mario Bustamante Leiva, robbed three victims, stole their personal belongings, and used their credit cards to make fraudulent purchases for his own enrichment. The Defendant's actions were not momentary lapses in judgment but were deliberate acts of predation stretching back decades and spanning three continents. Since the mid-1990s, Defendant Bustamente Leiva has followed a disturbing pattern of criminal conduct: enter or remain in a country illegally, target unsuspecting victims, profit from theft, face removal or incarceration, and begin again elsewhere. The instant offenses are simply the latest manifestation of that pattern. When one jurisdiction intervenes, he does not reform. Instead, he relocates to continue his criminality. The Defendant continued this pattern in the nation's capital where once again, while illegally present, he chose to exploit unsuspecting victims to enrich himself.

Defendant Bustamente Leiva now stands before the Court having pled guilty to three counts of Wire Fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts One, Two and Three) and one count of First Degree Theft in violation of 22 D.C. Code § 3212(a)(1)(B)(i) (Count Four). For the following reasons, and based on the 3553(a) factors, the Government requests the Court impose a sentence of 6 months' imprisonment on Counts One through Three to run consecutive to a 24-

1

month sentence of imprisonment on Count 4 for a total sentence of imprisonment of 30 months, followed by a three-year period of supervised release. Based on the severity of the defendant's conduct, and his repeated and sustained pattern of criminality while illegally being present in various countries, a sentence at the high-end of the Guidelines is necessary.

## BACKGROUND

### I.     Factual Background

Between April 12, 2025, and April 15, 2025, Mario Bustamante Leiva and his co-defendant, Cristian Montecino-Sanzana, worked in concert to target unsuspecting diners at restaurants in the District of Columbia. The goal of their scheme was to deliberately and methodically steal female victims' purses and use the stolen credit cards to make fraudulent purchases.

The manner and means by which the defendants carried out this scheme reflected planning, coordination, and the calculated exploitation of unsuspecting female diners. The defendants worked in concert to identify, surveil, and target diners at restaurants in the District of Columbia. They stole victim's purses — containing wallets, credit cards, and personal identifying information — and then immediately used the stolen credit cards to make unauthorized purchases.

This conduct was not impulsive. It was systematic. Using their victims' stolen credit cards, the defendants purchased pre-paid gift cards and then used those fraudulently obtained gift cards to continue spending, thereby extending and concealing their criminal activity. This layered approach demonstrates the defendants' sophistication and intent to maximize financial gain while minimizing detection.

<u>The April 12, 2025, Robbery</u>

On April 12, 2025, the defendants' preparation and coordination were captured on surveillance video from the exterior of Nando's, located at 836 F Street NW, Washington, D.C. At approximately 8:30 p.m., the defendants walked past the establishment and paused outside for several seconds while appearing to peer through the front window, conduct consistent with surveying the interior and identifying a suitable victim.



**Figure 1 - Bustamante Leiva (circled in red) and Montecino-Sanzana outside the Nando's on April 12, 2025.**

After this brief surveillance, co-defendant Montecino-Sanzana entered the restaurant while Defendant Bustamente Leiva removed his jacket and draped it over his left arm, conduct consistent with preparing to conceal stolen property. Acting in concert, the defendants then seized a purse belonging to H.G. and swiftly exited the restaurant with the victim's belongings. The purse contained personal effects and a credit card belonging to H.G. — who was visiting the District of

Columbia when she was robbed — which the defendants subsequently used to make unauthorized purchases.



**Figure 2 – Bustamante Leiva and Montecino-Sanzana enter the Nando's at approximately 7:31 PM. Suspect-2 appears to block the view of the back of H.G.'s chair while BUSTAMANTE LEIVA grabs H.G.'s purse with his left hand hides it under his coat.**

Minutes after the robbery, Defendant Bustamente Leiva and Co-Defendant Montecino-Sanzana acted in concert to further their fraudulent scheme by traveling together to the Safeway located at 490 L Street NW, Washington D.C. There, using a credit card stolen from H.G., Defendant Montecino-Sanzana executed an unauthorized purchase of a $500 Visa gift card, resulting in a $507.95 charge and a digital transmission in furtherance of the wire fraud offense. This was not an impulsive act, it was a calculated step designed to convert stolen credit into untraceable, reusable funds. After successfully completing the transaction, the defendants left the store together, having successfully transformed stolen financial information into portable currency.

But the defendants did not stop there. Between April 12, 2025, and April 15, 2025, they used the fraudulently obtained Visa gift card to make approximately $462 in additional purchases. These transactions reflect a deliberate effort to extract maximum value from the stolen credit card while insulating themselves from detection. By converting the stolen card into a prepaid gift card

and then spending down the balance, the defendants extended the fraud over multiple days and compounded the harm to the victim. Essentially, the defendants lived off the money they stole from their victims. For example:

a. On April 12, 2025, Defendant Bustamante Leiva and Co-Defendant Montecino-Sanzana paid for a hotel stay at the Motel 6 located at 6711 Georgia Avenue NW, Washington, D.C.  This purchase was in the amount of $275.99.

b. On April 14, 2025, Defendant Bustamante Leiva and Co-Defendant Montecino-Sanzana paid for a hotel stay at the Quality Inn located at 7212 Richmond Highway, Alexandria, VA.  This purchase was in the amount of $243.94.

c. On April 15, 2025, Defendant Bustamante Leiva and Co-Defendant Montecino-Sanzana added value to a SmarTrip card at the King Street Metro station in Alexandria, VA.  These purchases were in the amounts of $10.00 and $6.00.

d. On April 15, 2025, Defendant Bustamante Leiva and Co-Defendant Montecino-Sanzana made at least one purchase at the 7-Eleven located at 3100 Lockheed Boulevard, Alexandria, VA.  This purchase was in the amount of $0.07.

<u>The April 17, 2025, Robbery</u>

 On April 17, 2025, Defendant Bustamante Leiva continued his calculated pattern of theft by entering the Westin hotel, located at 999 9th Street NW, Washington, D.C. Inside the hotel's restaurant, where families were dining together, he targeted J.C. who was seated at a table with

her family members.   Taking advantage of the public setting and the victim's reasonable expectation of safety, Defendant Bustamente Leiva seized J.C.'s purse and exited the premises with the stolen property. The purse contained personal belongings and a credit card belonging to J.C.

Surveillance video captured the offense.   Specifically, the video showed Defendant Bustamante Leiva walk behind J.C. and steal her purse.   Defendant Bustamante Leiva used his coat to conceal his theft of the purse. This was not opportunistic conduct; it was a purposeful act carried out in a public space against an unsuspecting victim.



**Figure 3 - Bustamante Leiva entering the Westin at 9:15 PM**.

6



**Figure 4 – Left, Bustamante Leiva walking past J.C. Right, J.C.'s purse no longer on her chair as Bustamante Leiva walks away.**

Minutes after this robbery, Defendant Bustamante Leiva again traveled to the Safeway located at 490 L Street NW, Washington, D.C., where he made two unauthorized purchases using a credit card belonging to J.C. First, Defendant Bustamante Leiva purchased a bottle of Josh Cabernet Sauvignon Wine for $12.12. Defendant Bustamante Leiva then purchased a $400 National Core Amex gift card ending in 3742 for $407.95. On April 26, 2025, Defendant Bustamante Leiva used the National Core Amex gift card to purchase a hotel stay at the Motel 6 located at 6711 Georgia Avenue NW, Washington, D.C. This charge was in the amount of $133.19.

These purchases were not incidental; they reflected a deliberate effort to immediately monetize the stolen credit card and convert it into pre-paid transferable funds. Surveillance footage from Safeway captured Bustamente Leiva completing these transactions, further corroborating the calculated nature of his conduct.

The rapid transition from theft to fraudulent financial exploitation underscores the

7

purposeful and profit driven nature of the offense. Defendant Bustamante Leiva did not merely steal a purse; he quickly leveraged the stolen financial instrument to secure personal goods and a high-value prepaid card, demonstrating intent to extract maximum benefit while attempting to insulate himself from detection.



**Figure 5 - Bustamante Leiva making a purchase on April 17, 2025, at 9:35 PM using J.C.'s credit card.**

8



**Figure 6 - Bustamante Leiva making a second purchase on April 17, 2025, at 9:45 PM using J.C.'s credit card.**

<u>The April 20, 2025, Robbery</u>

On April 20, 2025, Defendant Bustamante Leiva continued his calculated pattern of targeting unsuspecting diners in public spaces. That evening, he entered Capital Burger, located at 1005 7th Street NW, Washington D.C., where K.N. was dining. Taking advantage of the busy restaurant setting, Defendant Bustamente Leiva deliberately positioned himself within arm's reach of K.N. and seized her purse from the area near her feet. He then exited the restaurant with the stolen property.

K.N.'s purse contained several personal credit cards and approximately $3,000 in United States currency.  This offense involved not only financial loss for K.N., but the invasion of her personal security while dining with her family at a restaurant.

Surveillance video captured Bustamante Leiva's actions.   In relevant part, Defendant Bustamante Leiva entered the business at approximately 7:52 p.m. and sat down at a table within arm's reach of K.N.  Defendant Bustamante Leiva sat down in the chair closest to K.N. and pushed the chair back from his table and in the direction of K.N, conduct consistent with intentionally closing the distance to her belongings. He repeatedly looked downward in the direction of K.N.'s purse. CCTV footage confirms that K.N.'s purse was at her feet and within her immediate possession prior to Defendant Bustamente Levia's actions.



**Figure 7 – Bustamante Leiva along with the item determined to be K.N.'s purse.**

Seconds later, Defendant Bustamante Leiva deliberately twisted his body to his left, towards K.N.'s purse, and extended his left leg in that direction. Simultaneously with this movement, the object determined to be K.N.'s purse was seen moving out of camera view and in the direction of Defendant Bustamante Leiva. The video captured Defendant Bustamente Leiva bending down with his jacket in one hand and, with his other hand, picking up an object from the

floor that law enforcement determined to be K.N.'s purse.  After stealing the purse, Defendant

Bustamante Leiva then got up from his seat and exited the restaurant.



**Figure 8 – K.N.'s purse pre and post offense**.



**Figure 9 – Bustamante Leiva picking up K.N.'s purse.**

11

After stealing K.N.'s purse, Defendant Bustamante Leiva traveled to Angolo Ristorante Italiano, located at 2934 M Street NW, Washington, D.C., where he made an unauthorized purchase using one of K.N.'s American Express credit cards.  This purchase was in the amount of $15.40.  By making this purchase, Defendant Bustamante Leiva caused a digital transmission in furtherance of the wire fraud offense.

Surveillance footage from the restaurant captured Bustamante Leiva in possession of some of K.N.'s property, including K.N.'s stolen purse, stolen wallet and at least one of K.N.'s credit cards (the latter of which the restaurant was able to match to two of the transactions made by Bustamante Leiva) further corroborating his direct involvement in the theft and subsequent financial exploitation.



**Figure 10 – BUSTAMANTE LEIVA using K.N.' credit card.**



**Figure 11 – Bustamante Leiva with K.N.'s purse and wallet.**

<u>Defendant Bustamante Leiva's Arrest on April 26, 2025</u>

On April 26, 2025, law enforcement determined that Defendant Bustamante Leiva was at the Motel 6 located at 6711 Georgia Ave NW, Washington, D.C.  Investigators knocked on the door of Room 311 and when Defendant Bustamante Leiva answered the door he was arrested.

<u>Search Warrant Execution</u>

On April 27, 2025, at approximately 12:28 AM, law enforcement executed a search warrant of the defendant's hotel room.  From the room, law enforcement recovered K.N.'s purse and wallet, an Amex gift card ending in 3742, a Black Jacket with a white fur collar, a pair of Nike camouflage sneakers, a business card belonging to the manager of the Quality Inn in Alexandria, VA, approximately $3,174.35 in United States currency and a five Euro note, and a WMATA SmarTrip card.  The jacket and Nike and sneakers that were recovered from Room 311 appeared

to match the jacket and sneakers worn by Defendant Bustamante Leiva during the robberies on April 17th and April 20th.

This offense reflects the same hallmarks present throughout the defendant's scheme-targeting female victims in restaurants, exploiting moments of distraction, and using concealment techniques to execute the theft. The repeated nature of this conduct, carried out over multiple days and against multiple victims, underscores the need for a sentence that reflects the seriousness of the crime, promotes respect for the law, and deters similarly predatory conduct.

## II.     The Pre-Sentence Investigation Report

The Pre-Sentence Investigation Report (PSIR) summarizes Defendant Bustamante Leiva's personal background and extensive criminal history. The PSIR illustrates that Defendant Bustamante Leiva has engaged in a lifetime of criminal activity that spans continents and belies any suggestion that he moved to the United States in search of lawful employment.  Rather, his criminal history, including his outstanding warrants in New York and Utah, demonstrate that the Defendant traveled to the United States to continue his spree of criminal activity.  The Defendant, throughout his life, has engaged in the same pattern of conduct around the world: commit crimes involving theft, get caught and sentenced, and then deported.  The Defendant's extensive criminal history, as set forth in the PSR, considered in combination with the sophistication of his crimes and the fact that he has failed to cease his criminal behavior, irrespective of his repeated convictions and lengthy periods of incarceration, clearly establishes that a prison sentence at the top of the guidelines is necessary to protect the community. The Court cannot be assured that the defendant will not reoffend or be deterred from future criminal conduct without the imposition of

a significant sentence, particularly given that he has had repeated bites at the apple without changing his behavior.

Defendant Bustamante Leiva is 50 years old and was born in Santiago, Chile.  PSIR at ¶ 59.  He grew up in Chile where he lived until he was 30 years old, at which point he moved to Spain to find work.  PSIR at ¶¶ 60-66.  The Defendant did not have legal documentation to live in Spain.  PSIR at ¶ 64.  Defendant Bustamante Leiva remained in Spain for several years until he was deported back to Chile.  PSIR at ¶ 66.

In 2013, Defendant Bustamante Leiva moved to London, England to look for work.  PSIR at ¶ 67.  Over the course of three years, he was charged with and convicted of approximately *a dozen thefts offenses, as well as attempted burglary*.  PSIR at ¶ 67.  In 2015, after committing this series of crimes, Defendant Bustamante Leiva was once again deported back to Chile.  PSIR at ¶ 67.

After spending several years in Chile, Defendant Bustamante Leiva traveled to the United States. First, he traveled to Orlando, Florida, and then Utah, followed by New York, New Jersey, and finally Washington, D.C.  PSIR at ¶ 69.  Defendant Bustamante Leiva entered the United States at Orlando International Airport on or about August 16, 2021, as a Visa Waiver Visitor.  Thus, Defendant Bustamante Leiva was only authorized to remain in the United States until November 13, 2021.  Defendant Bustamante Leiva did not leave the United States by November 13, 2021, and continued to remain in the United States illegally.  During much of this time, he lived a transient lifestyle, staying with friends, in hotels, or at times on the street. PSIR at ¶ 69.

The PSIR further reflects that Defendant Bustamante-Leiva has struggled with alcoholism for much of his adult life. PSIR at ¶ 79.

Defendant Bustamante Leiva's criminal history dates back three decades and spans three countries. On March 14, 1995, the defendant was convicted of Robbery/Theft in Chile and sentenced to three years imprisonment. PSIR at ¶ 44. In 2007, Defendant Bustamante Leiva was arrested in Chile for theft and arrested for threats in 2012. PSIR at ¶ 58.

Defendant Bustamante Leiva's pattern of criminal conduct continued when he moved to the United Kingdom. Defendant Bustamante Leiva was first arrested on September 11, 2013, on the charge of Attempted Burglary with Intent to Steal – Dwelling. PSIR at ¶ 45. Undeterred by a pending criminal case, Defendant Bustamante Leiva committed a theft, for which he was arrested on October 30, 2013. PSIR at ¶ 46. Defendant Bustamante Leiva was sentenced to 13 weeks imprisonment for that theft. PSIR at ¶ 46. Following his release, Defendant Bustamante Leiva continued his pattern of criminal conduct. He was charged with committing one count of Theft on December 15, 2013, quickly followed by two more charges of Theft from a Person on December 28, 2013. PSIR at ¶ 47. On April 10, 2014, Defendant Bustamante Leiva pled guilty to these offenses and was sentenced to 17 weeks imprisonment. PSIR at ¶ 48.

Despite having served yet another period of incarceration, Defendant Bustamante quickly reoffended, *committing a spree of 11 property thefts over the course of just one month in 2014.* For these crimes, Defendant Bustamante Leiva was sentenced to 3 years of imprisonment on March 23, 2015. PSIR at ¶ 50. On that same date, he was sentenced to a concurrent sentence of

16

12 months' imprisonment for the attempted burglary he had been charged with on November 9, 2013.  PSIR at ¶ 45.

This criminal history is significant and clearly demonstrates that Defendant Bustamente-Leiva's criminal conduct is not isolated to the instant offense, nor confined to a single jurisdiction. Rather, his record reflects a repeated pattern of theft-related offenses across multiple countries, followed by deportations and subsequent reoffending. The instant conduct therefore represents not an aberration, but a continuation of a longstanding pattern of property crimes committed for personal gain.

Defendant Bustamante Leiva currently has two cases pending against him for which he has active warrants.  On September 9, 2021, Defendant Bustamante Leiva was charged with retail theft and open container/drinking alcohol in a vehicle in Box Elder County, Utah.[1]  PSIR at ¶ 57.  A statewide warrant was issued for his arrest on November 16, 2021.  PSIR at ¶ 57. According to the incident report associated with these charges, police responded to a call for reckless driving.  PSIR at ¶ 57.  When officers located the vehicle, it was unoccupied.  PSIR at ¶ 57.  When the vehicle's occupants returned and began to drive off, officers pulled the vehicle over after observing a traffic infraction and found the vehicle occupied by the defendant, who was in possession of two open containers of alcohol, and another individual.  PSIR at ¶ 57.  On September 11, 2021, Defendant Bustamante Leiva was charged with credit card theft and stolen property in New York County,

---

[1] According to the incident report, police spoke with the driver of the vehicle who admitted that the occupants of the vehicle, including Defendant Bustamante Leiva, were at Walmart to steal gift cards.  PSIR at ¶ 57.

New York. PSIR at ¶ 56. An extraditable warrant was issued for his arrest on March 19, 2025, after he failed to appear for a scheduled court hearing. PSIR at ¶ 56.

## ARGUMENT

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>         (i) issued by the Sentencing Commission . . .; and
>         (ii) that, . . . are in effect on the date the defendant is

sentenced; . . .

(5) any pertinent policy statement –
    (A) issued by the Sentencing Commission . . . and
    (B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

**THE APPLICABLE SENTENCING GUIDELINES**

The PSIR estimates Defendant Bustamante's offense level on Counts 1-3 (Wire Fraud) to be 5 and his criminal history to be category I, yielding a Guidelines sentencing range of 0 to 6 months' imprisonment.  PSIR at ¶ 98.  Additionally, the PSIR reflects a Guidelines range of a term of not more than 3 years of supervised release on Counts 1-3.  PSIR at ¶ 106.  The PSIR estimates Defendant Bustamante's Guidelines Sentencing range on Count 4 (First Degree Theft) to be 6 to 24 months.  PSIR at ¶ 100.  The PSIR reflects a Guidelines range of a term of three years supervised release if Defendant Bustamante Leiva is sentenced to more than one year imprisonment on Count 4.  PSIR at ¶ 105.  The Government agrees with these Guidelines calculations.

**THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The Government recommends that the Court sentence Defendant Bustamante Leiva at the top of the sentencing Guidelines to a total of 30 months of imprisonment to be followed by 3 years of supervised release.   Specifically, the Government is seeking a sentence of 6 months imprisonment on Counts 1 through 3 and 24 months of incarceration Count 4, with those sentences to run consecutive to one another.  This sentence — at the top end of the applicable Guidelines' range — reflects the nature of the offenses to which the defendant has pled guilty, Defendant Bustamante's lengthy criminal history, and provides deterrence to others in the community who might consider committing similar crimes.

I.      **The Nature and Circumstances of Defendant Bustamante Leiva's Offenses**

Over the course of just eight days, in our Nation's capital, Defendant Bustamente Leiva engaged in a calculated pattern of predatory conduct, repeatedly targeting unsuspecting female diners at restaurants throughout the District of Columbia. He entered crowded establishments where families were gathered, deliberately positioned himself within arm's reach of his victims,

seized their purses, and monetized stolen credit cards within minutes. This was not a momentary lapse in judgment, it was a deliberate and efficient scheme executed for personal gain. And he did all of this while unlawfully present in the United States, continuing a pattern and practice of criminal conduct that stretches back decades and spans three continents.

Although the offenses did not involve physical violence, they occurred in crowded restaurants, spaces where families gather and members of the community and visitors to our nation's capital reasonably expect safety. By preying on individuals in these environments, Defendant Bustamente Leiva, undermined that sense of security. These crimes strike at the core of public trust and communal safety. The victims were not corporations or faceless entities; they were real people trying to enjoy a meal in D.C., dining with family members, carrying personal effects and forms of personal identification.

Equally troubling is the rapid succession and calculated nature of the offenses — designed to extract as much profit as possible before the victims could protect themselves and freeze their assets. Each theft was followed almost immediately by fraudulent financial transactions designed to convert stolen credit into prepaid, transferable funds. This pattern of conduct reflects preparation and profit-driven motives, not impulsivity. The fact that all three robberies occurred within an eight-day period underscores the deliberate and sustained nature of the scheme.

The D.C. Council has subjected individuals who commit multiple thefts within a six-month period to the 10-year statutory maximum for violations of 22 D.C. Code § 3212(a)(1)(B)(1). And Congress has indicated that convictions for Wire Fraud should be treated seriously given the maximum sentence for violations of 18 U.S.C. § 1343 is 20 years. These statutory frameworks reflect legislative judgment that repeated financial exploitation of victims — particularly through sophisticated or coordinated conduct — demands meaningful punishment.

21

In sum, Defendant Bustamante Leiva's conduct was calculated, repetitive and predatory. These crimes violated the victims' reasonable expectation of safety and security while visiting private dining establishments; a sense of safety and security that was stolen from them when they were robbed and cheated by the Defendant. The District of Columbia should not become another brief stop in the Defendant's decades-long cycle of theft. A top-of-the Guidelines sentence is necessary to impose meaningful consequences and deter further harm by the Defendant.

2. **History and Characteristics of the Defendant**

Defendant Bustamante Leiva's criminal history spans three decades and is marked by a consistent pattern of theft-related conduct across three continents. This case does not represent a deviation from an otherwise law-abiding life. Rather, it reflects the continuation of a longstanding course of property crimes marked by the calculated targeting of victims and financial exploitation, conduct that shows no sign of stopping and demonstrates no concern for the lives of those the Defendant has disrupted.

Beginning in the mid-1990s, Defendant Bustamente-Leiva was convicted of robbery, theft, and related offenses. After relocating internationally, he continued to engage in similar conduct, resulting in numerous convictions abroad and deportations from multiple countries. Despite these prior encounters with the criminal justice system — and despite the significant consequences of deportation — Defendant Bustamente Leiva resumed the same type of criminal conduct upon arriving in the United States.

The manner in which Defendant Bustamante Leiva stole from his unsuspecting targets in London is nearly identical to his conduct in this case. Specifically, Defendant Bustamante Leiva would enter restaurants, bars, cafés and other public places to stealthily steal property from unsuspecting victims, with a particular focus on luxury handbags. In one theft that occurred at a

London bar on November 18, 2014, Defendant Bustamante Leiva kicked a handbag that was at the victim's feet away from the victim. Defendant Bustamante Leiva then proceeded to hide the handbag under his coat as he left the bar. This conduct, down to the way the theft was carried out, mirrors Defendant Bustamante Leiva's actions the evening he stole K.N.'s purse on April 20, 2025.

The pattern is unmistakable: relocation, theft, arrest or deportation, and reoffending. The instant offenses are consistent with that history. They demonstrate not only extreme recidivism, but entrenched criminal behavior centered on the theft and exploitation of others' property for financial gain.

The government acknowledges that Defendant Bustamante Leiva had a difficult upbringing in Chile and has struggled with alcoholism for much of his life. And to Defendant Bustamante Leiva's credit, he has taken steps while being incarcerated to address his substance abuse. However, these challenges do not outweigh the persistent and repetitive nature of his criminal conduct committed without concern for others. Defendant Bustamente-Leiva's decision to continue engaging in nearly identical theft-related offenses — despite prior convictions, deportations, and prior terms of incarceration — demonstrates that past interventions have failed to deter him from engaging in further criminal conduct. The instant offenses are consistent with his long-standing pattern of exploiting others' property for financial gain.

Accordingly, Defendant Bustamente-Leiva's history and characteristics weigh in favor of the Government's requested sentence. A meaningful term of incarceration is necessary to reflect his entrenched recidivism, promote respect for the law, and protect the public from further theft-related conduct.

23

## II.     The Need for the Sentence Imposed

The Government's requested sentence of imprisonment is sufficient, but not greater than necessary to satisfy the purposes of sentencing.

First, the sentence provides specific deterrence. Defendant Bustamente Leiva has demonstrated, over the course of three decades and across multiple countries, that prior convictions, deportations, supervision, and incarceration have not deterred him from reoffending. *He continued to commit theft-related crimes in the United Kingdom even while on bail,* demonstrating an extreme indifference to criminal laws and an orderly society. The instant offenses — committed in rapid succession over eight days — reflect entrenched recidivism. A significant custodial sentence is necessary not only to reflect the seriousness of the offense, but to interrupt a cycle of unlawful presence and victimization that has persisted across jurisdictions for decades. If conduct like this is treated as routine, then we normalize a world where calculated theft is simply the cost of doing business. The Court should send a different message, one that makes clear that repeated, deliberate, targeted theft carries real consequences.

Second, the requested sentence provides general deterrence. Wire fraud and theft offenses committed against those trying to enjoy a meal at private establishments undermine community safety and erode public trust. That concern is magnified where the defendant committed these crimes while unlawfully present in the United States after overstaying his visa. The Court's sentence should send a clear message that repeated calculated exploitation of unsuspecting victims, particularly when committed by an individual present in this country in violation of the law, will result in meaningful consequences.

Third, although  Defendant Bustamante Leiva technically qualifies as a zero-point offender under U.S.S.G. § 4C1.1(a)(1) because he does not have any criminal convictions in the United

24

States,  his criminal history score grossly understates the seriousness and breadth of his criminal conduct.[2]  His extensive foreign convictions — many involving nearly identical theft-related behavior — are not reflected in his criminal history category. Thus, even though a sentence of probation would be a Guidelines compliant sentence, it would fail to account for his longstanding pattern of reoffending and would inadequately protect the public.

Over the last three decades, Defendant Bustamante Levia has operated as an international thief. He has repeatedly stolen from victims in Chile, the United Kingdom, and now the United States.  Prior periods of incarceration, deportation, court supervision, and the threat of rearrest have not acted as adequate deterrents.  The requested 30 months of imprisonment, followed by three years of supervised release, is a reasonable and necessary sentence to finally disrupt the Defendant's ongoing and sustained commitment to international theft against unsuspecting victims.

## III.   Restitution and Forfeiture

With respect to restitution, Wire Fraud is an "offense against property under" Title 18, and thus falls under the Mandatory Victim Restitution Act.  18 U.S.C. § 3663A.  Therefore, the Court must order that "the defendant make restitution to the victim of the offense[s]."  18 U.S.C. § 3663(a)(1).  In this case, Defendant Bustamante Leive has admitted, as part of the statement of offense in support of his guilty plea, that he made unauthorized purchases in the following amounts: (1) $507.95 using a credit card stolen from H.G.; (2) $420.07 using a credit card stolen from J.C.; and (3) $15.40 using a credit card stolen from K.N.  Additionally, the Defendant

---

[2] Although the 2025 U.S. Sentencing Guidelines deleted section 4A1.3 – Departures Based on Inadequacy of Criminal History Category, the 2024 U.S. Sentencing Guidelines explained that prior sentences not used in computing a defendants criminal history category, such as sentences for foreign convictions, could constitute a based for an upward departure.  *See* U.S.S.G. §§ 4A1.3(a)(1), (2)(A).

admitted to stealing $3,000 in United States currency from K.N.  The Government will provide the relevant contact information to facilitate restitution payments through the Clerk's Office.  The Government respectfully requests that the Court order Defendant Bustamante Leiva to pay restitution to H.G., J.C., and K.N. in the amounts listed above.

With respect to forfeiture, the Defendant has consented to the entry of a forfeiture money judgment in the amount of $3,000 in United States currency.

## CONCLUSION

For all the foregoing reasons, and based on the 3553(a) factors, the Government respectfully requests that the Court impose a sentence of 6 months' incarceration on Counts 1 through 3 to be imposed consecutively to a sentence of 24 months incarceration on Count 4 for a total of 30 months of imprisonment, followed by three years of supervised release. The defendant's conduct in this case was egregious and he deserves a sentence at the high-end of the guidelines.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:      */s/ Benjamin Helfand*
Benjamin Helfand
D.C. Bar No. 1658708
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-252-7059
Benjamin.Helfand@usdoj.gov